STATE ex rel. JAMES M. ISABELL

*v.*

CHARLES PARKHURST, Warden, Davidson County
Workhouse.

399 S.W.2d 781.

(*Nashville,* December Term, 1963.)

Opinion filed May 8, 1964.

J. WILLIAM RUTHERFORD, Nashville, for relator-plaintiff
in error.

SHELTON LUTON, County Attorney, Nashville, for de-
fendant in error.

656

Mr. Justice Felts delivered the opinion of the Court.

This was a petition for writ of habeas corpus in which relator averred that he was being illegally held in the workhouse under a sentence of the General Sessions Court of Davidson County; that such sentence or judgment was void because there had been no entry of it upon the minutes of the Court; and that relator was entitled to be released from such illegal restraint.

Defendant filed a return or answer, denied relator's restraint was illegal, and averred that he was being held under a valid judgment and sentence by the General Sessions Court. Defendant exhibited a copy of the warrant which showed that relator was charged with "malicious destruction of property by throwing a brick through prosecutrix's car window."

On the back of the warrant it appeared that relator pleaded guilty to the charge, waived his right to be tried only by indictment or presentment, and his right to a trial by jury; and that the Court entered judgment that relator pay a fine of $50.00 and serve six months in the workhouse. Defendant also exhibited with his answer a photostatic copy of the page of the docket on which appeared a brief statement as to the name of relator, the charge, the fine and sentence; and the amount of the costs.

It was stipulated that these exhibits were true and should be looked to as evidence. It was further stipulated that no minutes are kept by the Court of General Sessions or by the Clerk of said Court, and that there was no

minute entry made in any minute book concerning the judgment and sentence of relator; and that the recording of the judgment and sentence was made by writing the same upon the back of the warrant and by the entries in the criminal docket of the Court, as shown by the exhibits.

It further appears from the record that relator did not appeal, but acquiesced in that judgment; and that after serving some two and a half months of the sentence in the workhouse, he filed the aforesaid petition for the writ of habeas corpus.

This habeas corpus case was heard before the Honorable Roy A. Miles, Circuit Judge, upon the petition, the answer thereto; and the exhibits, and the stipulations above mentioned, without the introduction of any other evidence. The Trial Judge entered judgment dismissing the petition and remanding the relator to the custody of defendant to serve the sentence and pay the fine that had been imposed upon him by the General Sessions Court.

Relator prayed and was granted an appeal from that ruling, and an order was entered by the Trial Judge so as to provide that, although that Court was of the opinion that the petition should be dismissed and relator should serve the remaining portion of his sentence, yet since the time required for appellate review of the Trial Judge's action would in effect deny relator the relief sought by appeal, the Trial Judge modified his prior order so as to allow relator to be released from custody upon execution of a proper appearance bond, which was done.

Relator insists that since no minute book is kept by the General Sessions Court or its Clerk, and no entry was made on any minutes in this case, that Court's judgment and sentence of relator is utterly void; and that the Trial

Judge should have so held and granted the relief sought by relator in his petition for habeas corpus.

We think this contention is unsound. As is well known, the General Sessions Court of Davidson County was created by the Legislature by Chapter 12, Private Acts of 1937. That Court, the first of such in the State, "was created to take over the judicial powers and functions of Justices of the Peace in Davidson County"; and the rules of practice and procedure in that Court were largely the same as they had been in the courts of the Justices of the Peace. The constitutionality of that Act was sustained by this Court (opinion by Chief Justice Green) in *Hancock v. Davidson County,* 171 Tenn. 420, 104 S.W.2d 824.

In *Chrisman v. Metropolitan Life Ins. Co.,* 178 Tenn. 321, 157 S.W.2d 831, the question was whether the General Sessions Court of Davidson County is "a court of record." This Court, in an opinion by Chief Justice Green, fully considered the 1937 Act, and held that that Court is not a court of record. Pointing out that it was difficult to frame a definition of a court of record that would suffice in all jurisdictions, Judge Green accepted Blackstone's definition which was in these words:

"that where the acts and judicial proceedings are enrolled in parchment for a perpetual memorial and testimony, which rolls are called the record of the court and are of such high and supereminent authority that their truth is not to be called in question."

There, the Court further pointed out that the 1937 Act creating this General Sessions Court had no provision for the keeping of minutes, and said:

"Minutes are indicia of courts of record in this State. The clerks of all our courts of record are required 'to keep a well bound book, in which shall be entered the minutes of each day's proceedings during the session of the court, in the order in which they are made.' Code, sec. 10052(5).

Section 10112 of the Code provides 'the minutes of the court shall be read each morning in open court, and signed by the judge.' When the minutes of a court of record are signed by a judge they become the highest evidence of what was done in court and, so far as they are records of judicial proceedings, they import absolute verity, and are conclusive unless attacked for fraud. *Reeves v. Hager,* 101 Tenn. 712, 50 S.W. 760; *Dyer v. State,* 11 Lea. 509, 79 Tenn. 509; *Moore v. State,* 3 Heisk. 493, 50 Tenn. 493.

Now it is true that the Act creating the court of general sessions provides that dockets shall be kept, which dockets in a general way show the proceedings had in such court. A clerk is provided for the court of general sessions and the Act indicates that he is to keep the dockets. The dockets, however, are no more than the dockets formerly kept by justices of the peace. They are not read each morning and verified by the signature of the judge and do not approach the dignity and verity of authenticated minutes of a court of record."

After the passage of Chapter 12, Private Acts of 1937, the Legislature created many other courts of general session in other counties, and in 1959 passed a general act (Ch. 109) creating a General Sessions Court in each of the several counties of the State with certain exceptions. That Act followed largely the original 1937 Private Act, in that it provided that the practice and procedure, etc.,

in the Justice of the Peace courts should govern in the General Sessions Courts (Ch. 109, sec. 6; now T.C.A. 16-1118).

Section 8 provides for the keeping of separate dockets for civil cases and criminal cases and specifies generally what shall be entered upon such dockets of the General Sessions Court. And that section also contains a further provision as to the keeping of the criminal docket, which is now T.C.A. 40-425, and is in these words:

"Criminal docket.—There shall be kept a criminal docket in which there shall be entered the disposition of all criminal cases disposed of by the court of general sessions, which docket shall show as to the misdemeanors now within the jurisdiction of justices of the peace under the small offense law, the name of the defendant, the charge against him, and the disposition of the case. In cases over which justices of the peace do not now have jurisdiction under the general law, it shall be the duty of the clerk to keep a minute book and in such minute book he shall enter the action of the court by appropriate minute entry setting forth the name of the defendant, his arraignment upon the charge against him, his plea, his waiver of right of trial by indictment, information or presentment, his waiver of a jury trial and his consent to be tried by the court of general sessions upon such charge. Likewise, there shall be entered therein a judgment of the court of general sessions upon the waiver of the defendant."

Relator relies on the latter part of the section above quoted. He insists that his offense was one over which a Justice of the Peace does not now have jurisdiction and that it was, therefore, "the duty of the clerk to keep a

minute book and in such minute book he shall enter the action of the court by appropriate minute entry. * *''

The above quoted provisions of the 1959 Act (Ch. 109) are all of the provisions, so far as we have been able to find, which could be claimed to have affected the status of the Davidson County General Sessions Court. It will be observed that none of them even remotely expressed any legislative intent to change the status of the Davidson County General Sessions Court so as to make it a ''court of record.'' It must be assumed that the Legislature was aware of our decision in the Chrisman case holding that Court was not a ''court of record.''

If the Legislature had intended to change that decision or to make the Davidson County General Sessions Court a ''court of record,'' we must assume that they would have done so in apt words. Since the passage of the 1959 Act, and on January 8, 1964, this Court, in an opinion by Chief Justice Burnett (unreported), *Alfred G. Rutherford, Circuit Court Clerk, etc. v. C. Beverly Briley, County Judge, et al.*, again reiterated its holding that the Davidson County General Sessions Court is not a ''court of record.''

The language above quoted, relied on by relator, to the effect that ''it shall be the duty of the clerk to keep a minute book * * *'' seems merely to impose a duty upon the clerk with respect to keeping his records; but it does not provide that the General Sessions Judge shall sign the minutes, or contemplate any such procedure as that which is uniformly followed by judges in courts of record.

For these reasons, the judgment of the Circuit Court dismissing the petition for the writ of habeas corpus is affirmed. The costs of the cause are adjudged against relator and the surety on his bond.